United States District Court
Southern District of Texas
**ENTERED**
January 05, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE E. RANDLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1058 |
| | § | |
| DRAGADOS USA, INC., | § | |
| PULICE CONSTRUCTION, INC., | § | |
| SHIKUN & BINUI AMERICA, INC., | § | |
| and ALMEDA GENOA CONSTRUCTORS, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Joe E. Randle ("Plaintiff" or "Randle"), brings this action for discrimination, harassment, retaliation, and wrongful discharge based on race, color, and sex in violation of the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code §§ 21.001, et seq., against defendants, Dragados USA, Inc., Pulice Construction, Inc., and Shikun & Binui America, Inc., as members of defendant Almeda-Genoa Constructors ("AGC") (collectively, "Defendants"), a common-law partnership and joint venture that employed Randle for approximately two months in early 2018.[1] Pending before the court are Defendants' Motion for Summary Judgment and Brief in Support ("Defendants' MSJ")(Docket Entry No. 27), Defendants' Objections and Motion to Strike Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment

---

[1]Plaintiff's Original Complaint, Docket Entry No. 7.

("Defendants' Objections and Motion to Strike") (Docket Entry
No. 31), Defendants' Motion for Sanctions (Docket Entry No. 32),
Defendants' Motion in Limini and Brief in Support ("Defendants'
Motion in Limini") (Docket Entry No. 33), and Plaintiff's Motion
for Ineffective Assistance of Counsel During Trial (Docket Entry
No. 34).  For the reasons explained below, Defendants' MSJ will be
granted, Defendants' Objections will be sustained, Defendants'
Motion to Strike will be granted, Defendants' Motion for Sanctions
and Defendants' Motion in Limini will be denied as moot, and
Plaintiff's Motion for Ineffective Assistance of Counsel during
Trial will be denied.


## I.  **Undisputed Facts**[2]

In January of 2018 Randle began working for AGC as a laborer
and equipment operator on the State Highway ("SH") 288 construction
project that AGC was performing for the Texas Department of
Transportation.[3]  The decision to hire Randle was made by Fabio
Jaramillo ("Jaramillo"), the Segment Manager for the SH 288

---

[2]The undisputed facts are derived from the Declaration of Cody
Peters ("Peters Declaration"), Exhibit A to Defendants' MSJ, Docket
Entry No. 27-2, and excerpts from the Oral Deposition of Joe
Richard Randle, Jr., ("Randle Deposition"), Exhibit C to
Defendants' MSJ, Docket Entry No. 27-4.  Page numbers for docket
entries in the record refer to the pagination inserted at the top
of the page by the court's electronic filing system.

[3]Randle Deposition, pp. 5:20-22, 63:8-18, Exhibit C to
Defendants' MSJ, Docket Entry No. 27-4, pp. 3 and 5.

project, based on a recommendation from Galvino Barrera
("Barrera"), a project foreman. Randle worked on the crew
supervised by Barrera until February 22, 2018, when Barrera was
replaced by Francisco Esqueda ("Esqueda"). Randle was employed on
the SH 288 project until March 9, 2018, when Jaramillo discharged
him for repeatedly violating work rules by using his cell phone
while working, taking long and unauthorized breaks, abandoning his
position without notice to his supervisor, and incorrectly
reporting on the job training hours.[4]

## II.  Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment
because plaintiff cannot cite evidence capable of proving that he
was discharged because of his race,[5] that his claims for sexual
harassment are actionable, or that he was discharged in retaliation
for engaging in protected activity.[6] Asserting that his former
supervisor falsified the disciplinary report that contributed to
his discharge, plaintiff urges the court do deny Defendants' MSJ.[7]

---

[4]See Personnel Action Form, Exhibit A-4 to Peters Declaration,
Docket Entry No. 27-2, p. 19.  See also Notes of Carla Bright,
Peters' predecessor, Exhibit A-2 to Peters Declaration, Docket
Entry No. 27-2, pp. 12-15.

[5]Defendants' MSJ, Docket Entry No. 27, pp. 18-24.

[6]Id. at 24-30.

[7]Plaintiff[']s Response to Defendants['] Motion for Summary
(continued...)

**A.    Applicable Law**

    1.    <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56.   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).   A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case."   <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) <u>(en banc)</u> (per curiam) (quoting <u>Celotex,</u> 106 S. Ct. at 2553).   "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."   <u>Id.</u>   If, however, the moving party meets this burden, Rule 56 requires the nonmovant to

---

[7](...continued)
Judgment with Disputed Facts ("Plaintiff's Response"), Docket Entry No. 28, p. 6.

go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

2.   The Texas Commission on Human Rights Act

Randle's employment discrimination claims are not based on federal law but, instead, on the TCHRA.  Discrimination and harassment in employment based on race and sex are prohibited by the TCHRA, which provides that

> [a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Labor Code § 21.051. Retaliation is prohibited by § 21.055 of the Texas Labor Code, which provides that

-5-

> [a]n employer . . . commits an unlawful employment
> practice if the employer . . . retaliates or
> discriminates against a person who, under this chapter:
>
> (1)   opposes a discriminatory practice;
> (2)   makes or files a charge;
> (3)   files a complaint; or
> (4)   testifies, assists, or participates in any manner
>       in an investigation, proceeding, or hearing.

Texas Labor Code § 21.055.

These provisions of the TCHRA are "modeled on the Federal Civil Rights Act of 1991 (Title VII); thus, Texas courts follow federal statutes and cases in applying the statute." Exxon Mobil Corp. v. Hines, 252 S.W.3d 496, 507-08 (Tex. App. — Houston [14th Dist.], 2008, pet. denied).  See also Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam) (recognizing that "[t]he [Texas] Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA"); Evans v. City of Houston, 246 F.3d 344, 349 (5th Cir. 2001) (the same analytical framework is used to evaluate claims of discrimination in employment under both Texas and federal law). The ultimate question in these cases is whether the employer intentionally discriminated against the employee.  See Exxon Mobil, 252 S.W.3d at 508.  Like comparable federal law, the TCHRA does not protect employees from unfair decisions, but only from decisions based on unlawful discrimination; the issue is not whether the employer made an erroneous decision, but whether the decision was made with discriminatory intent.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

-6-

Employment discrimination plaintiffs may rely on either direct or circumstantial evidence, or both. See Wallace v. Seton Family of Hospitals, 777 F. App'x 83, 87 (5th Cir. 2019) (per curiam) (citing Wallace v. Methodist Hospital System, 271 F.3d 212, 219 (5th Cir. 2001)). See also United States Postal Service Board of Governors v. Aikens, 103 S. Ct. 1478, 1481 n. 3 (1983) (recognizing that intentional discrimination may be proved by either direct or circumstantial evidence). "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." Portis v. First National Bank of New Albany, Mississippi, 34 F.3d 325, 328-29 (5th Cir. 1994). If direct evidence of discrimination exists, the plaintiff is allowed to bypass the burden-shifting analysis articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973), used in circumstantial evidence cases. Portis, 34 F.3d at 328 ("The McDonnel Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.").

The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing a prima facie case. Id. at 1824. Once a prima facie case is established, a presumption of discrimination arises, and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue. Id. If the defendant meets this burden of production, the presumption of discrimination

-7-

created by the prima facie case disappears, and the plaintiff is required to present evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination.   This burden may be met by producing "sufficient evidence to create a genuine issue of material fact that either (1) [defendants'] reason[s are] a pretext or (2) [defendants' reason[s], while true, [are] only one of the reasons for its conduct, and another 'motivating factor' is [plaintiff's] protected characteristic." Wallace, 777 F. App'x at 87 & n. 6 (citing Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 479-80 (Tex. 2001) (citing Texas Labor Code § 21.125(a) ("Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . .")).   In Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000), the Supreme Court explained that the McDonnell Douglas analysis does not require a plaintiff to produce evidence of both pretext and actual discriminatory intent to create a fact issue, and that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."   Id. at 2109.

**B.   Analysis**

1.   <u>Race and Color Discrimination</u>

Plaintiff alleges that defendants discriminated against him on the basis of his race and color, African American and black, because in late January of 2018 his supervisor, Barrera, a Hispanic male, told him, "I would not have hired you if I knew you were black," and also stated that plaintiff "hangs around white people too much."[8]  Defendants argue that they are entitled to summary judgment on Randle's race discrimination claims because he cannot produce direct or circumstantial evidence of race or color discrimination, and cannot produce evidence from which a reasonable jury could conclude that defendants' stated reasons for his discharge were a pretext for race or color discrimination.[9]

(a)   Plaintiff Fails to Cite Direct Evidence of Race or Color Discrimination

For workplace comments to constitute direct evidence of discrimination, the comments must be (1) related to the plaintiff's protected class, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue.  <u>Rubenstein v. Administrators of the Tulane</u>

_____

[8]Plaintiff's Original Complaint, Docket Entry No. 7, p. 5 ¶ 18.

[9]Defendants' MSJ, Docket Entry No. 27, pp. 18-24.

<u>Educational Fund,</u> 218 F.3d 392, 400-01 (5th Cir. 2000), <u>cert.</u> <u>denied,</u> 121 S. Ct. 1393 (2001) (quoting <u>Brown v. CSC Logic, Inc.,</u> 82 F.3d 651, 655 (5th Cir. 1996), <u>abrogated in part on other</u> <u>grounds by Russell v. McKinney Hospital Venture,</u> 235 F.3d 219, 225 (5th Cir. 2000)). If the comments fail to meet these criteria, if they are vague and remote in time, or if the speaker has no authority or influence over the adverse action at issue, the comments are merely stray remarks that are not sufficient to establish discrimination. <u>See Brown</u>, 82 F.3d at 655. <u>See also</u> <u>Laxton v. Gap, Inc.,</u> 333 F.3d 572, 583 n. 4 (5th Cir. 2003) ("We continue to apply the <u>CSC Logic</u> test when a remark is presented as direct evidence of discrimination apart from the <u>McDonnell Douglas</u> framework.").

The comments about which plaintiff complains do not constitute direct evidence of discrimination because Randle testified at his deposition that while Barrera supervised him when he started working on the SH 288 project, when the decision to discharge him was made Barrera no longer worked there,[10] the decision to discharge him was made by Jaramillo,[11] and Randle never reported Barrera's

_____

[10]Randle Deposition, pp. 251:4-6, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 33.

[11]<u>Id.</u> at 250:18-251:3, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 33. <u>See also</u> Declaration of Fabio Jaramillo ("Jaramillo Declaration"), Exhibit B to Defendants' MSJ, Docket Entry No. 27-3, pp. 3-4 ¶ 5.

-10-

discriminatory comments to Jaramillo or to anyone else.[12]  Thus, while Randle alleges that Barrera made race-based comments, undisputed evidence — including Randle's deposition testimony — shows that the comments about which Randle complains were neither made by an individual with authority over the decision to discharge him, related to the decision to discharge him, nor known to Jaramillo, the individual who made the decision to discharge him. Accordingly, the race-based comments that Randle contends Barrera made to him are not direct evidence of discrimination.

---

[12]Id. at 31:6-32:24, and 133:10-21, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 4 and 20.  Randle has submitted Plaintiff['s] Affidavit in Dispute of Defendant Peters, Cody, and Fabio Jaramillo ("Plaintiff's Affidavit"), Docket Entry No. 29, in the last paragraph of which he asserts that "the declaration of Jaramillo, Fabio is fictitious and holds no merits because not only is it done at a later date and time but . . . it is spurious and holds no factuality."  Id. at 2.  Defendants object and move to strike the last paragraph of Plaintiff's Affidavit arguing that "it is speculative, conclusory, and lacks foundation.  Plaintiff's allegations regarding the date of Fabio Jaramillo's declaration and opinions about its contents are nothing but arguments and conclusory allegations and are therefore inadmissible." Defendants' Objections and Motion to Strike Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 3.  Because Rule 56(c)(4) requires affidavits opposing a motion for summary judgment to be made on personal knowledge, and to show affirmatively that the affiant is competent to testify regarding the matters stated, and because Plaintiff's Affidavit fails to offer any basis for asserting that Jaramillo's declaration is fictitious, defendants' objection to the last paragraph of Plaintiff's Affidavit is **SUSTAINED**, and the defendants' motion to strike the last paragraph of Plaintiff's Affidavit will be granted.

      (b)  Plaintiff Fails to Cite Circumstantial Evidence of Race or Color Discrimination

Because Randle has not cited direct evidence of race or color discrimination, his claims for race and color discrimination must by analyzed under the <u>McDonnell Douglas</u> burden-shifting framework.

### (1)  **Randle Establishes a <u>Prima Facie</u> Case**

To establish a <u>prima facie</u> case of race discrimination using the <u>McDonnell Douglas</u> framework, Randle must cite evidence capable establishing that: (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by or treated less favorably than similarly situated employees outside of his protected group. <u>McDonnell Douglas,</u> 93 S. Ct. at 1824. <u>See Wallace,</u> 777 F. App'x at 87 (citing <u>McCoy v. City of Shreveport,</u> 492 F.3d 551, 557 (5th Cir. 2007)). Defendants do not dispute that the first through third prongs of Randle's <u>prima facie</u> case are established because as an African American, Randle belongs to a protected group; Randle was qualified for his position; and Randle suffered an adverse employment action when he was discharged.[13] Citing <u>Berquist v. Washington Mutual Bank,</u> 500 F.3d 344, 353 (5th Cir. 2007), <u>cert. denied,</u> 128 S. Ct. 1124 (2008), and asserting that Randle "admits

---

[13]Defendants' MSJ, Docket Entry No. 27, pp. 20-21 (disputing only Randle's ability to satisfy the fourth prong of his prima facie case).

-12-

that he does not know who, if anyone, replaced him after his discharge,"[14] defendants argue that "Randle has no competent evidence that he was treated less favorably than other employees outside his protected class in 'nearly identical circumstances.'"[15] In Berquist the Fifth Circuit held that for employees to be considered "similarly situated" the circumstances at issue must have been "nearly identical." 500 F.3d at 353 (quoting Perez v. Texas Department of Criminal Justice, Institutional Division, 395 F.3d 206, 210 (5th Cir. 2004), cert. denied, 126 S. Ct. 545 (2005)).

Randle has not cited evidence capable of establishing that he was replaced by someone outside of his protected group or that employees outside of his protected group were treated more favorably under similar, i.e., nearly identical, circumstances. Instead, Randle responds that "defendants' so called facts describing [his] job performance issues are . . . spurious and fictitious in nature."[16] And Randle testified at his deposition that he did not engage in any of the work rule violating conduct for which defendants say he was discharged.[17]

---

[14]Id. at 21 (citing Randle Deposition, p. 252:14-17, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 33).

[15]Id.

[16]Plaintiff's Response, Docket Entry No. 28, p. 3.

[17]Randle Deposition, pp. 177:6-182:21, Exhibit C to Defendants'
(continued...)

In work rule violation cases such as this, "a plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, . . . employees [outside his protected group] who engaged in similar acts were not punished similarly.'" Mayberry, 55 F.3d at 1090. Courts in this circuit are split on whether a plaintiff may establish a prima facie case merely by denying that he violated a relevant work rule. See Harkness v. Bauhaus U.S.A., Inc., 86 F.Supp.3d 544, 556 (N.D. Miss. 2015) (collecting cases). "In recognition of this split, recent decisions have assumed without deciding that mere denials satisfy a plaintiff's prima facie burden." Id. See also Lacy v. Dallas Cowboys Football Club, No. 3:11-cv-0300-B, 2012 WL 2795979, *7 (N.D. Tex. July 10, 2012) (assuming without deciding that plaintiff's denial of having engaged in the conduct for which he was discharged was sufficient to establish a prima facie case). Because the Fifth Circuit has held that establishing a prima facie case requires "only . . . a very minimal showing," Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996), the court assumes without deciding that Randle's deposition testimony that he did not engage in the conduct for which he was discharged is sufficient to establish a prima facie case.

---

[17](...continued)
MSJ, Docket Entry No. 27-4, pp. 27-28.

> **(2)   Defendants   Cite   a   Legitimate,   Non-Discriminatory Reason for Randle's Discharge**

Citing the Peters Declaration, Randle's personnel file, and the Jaramillo Declaration, defendants assert that Randle was discharged for repeatedly engaging in conduct that violated work rules by using his cell phone while working, taking long and unauthorized breaks, abandoning his position during work without notice to his supervisor, and incorrectly reporting hours for on the job training.[18]   Peters states in his declaration that he has been the Human Resources ("HR") Manager for the SH 288 project since August 20, 2018, that he is personally familiar with Randle's personnel records because when he "assumed the role of [HR] Manager for the 288 Project, [he] had access to records created by [his] predecessors in the course of their regular activities related to employees on the 288 Project, including records created by Ms. Bright,"[19] and he "reviewed notes prepared by Ms. Bright regarding Mr. Randle's employment, her investigation into reports made by Randle during his employment, as well as Randle's job performance issues."[20]   Peters states that

> [a]ccording to Ms. Bright's investigation notes, in February 2018, Randle reported to [her] that

---

[18]Defendants' MSJ, Docket Entry No. 27, pp. 10-14.

[19]Peters Declaration, Exhibit A to Defendants' MSJ, Docket Entry No. 27-2, p. 3 ¶ 5.

[20]Id. (citing Notes of Carla Bright, Exhibit A-2 to Defendants' MSJ, Docket Entry No. 27-2, pp. 12-15).

Mr. Barrera[] did the following: (1) requested that he not use his cell phone during work time as required by AGC's safety policies; and (2) acted envious of Randle's truck. . .

. . . [F]ollowing her meeting with Mr. Randle, Ms. Bright spoke with Mr. Jaramillo regarding the situation with Mr. Barrera and Mr. Randle, and Mr. Jaramillo confirmed that Mr. Barrera had to frequently counsel Mr. Randle about not using his phone and not doing his work.   Mr. Jaramillo also told Ms. Bright that he personally had instructed Mr. Barrera to issue Mr. Randle a write up for these infractions.   A true and correct copy of the disciplinary write up [in] Mr. Randle's personnel records dated February 2018 is attached as Exhibit A-3.   The write up lists Mr. Randle's issues with taking long, unauthorized breaks, using his phone during work hours, and not following directions when operating equipment.   The write up further states that Mr. Randle had been verbally warned many times about these issues.

. . .

. . . Barrera was no longer employed by AGC as of February 22, 2018, and Mr. Randle began reporting to a new foreman, Francisco Esqueda.

Ms. Bright's investigation notes detail continued performance issues by Mr. Randle, including discrepancies in hours reported by Mr. Randle and performance issues observed by Mr. Esqueda.   Mr. Randle was discharged on March 9, 2018, due to these continued job performance issues.   A true and correct copy of the Personnel Action Form from Mr. Randle's personnel records, which shows his termination date of March 9, 2018, is attached as Exhibit A-4.[21]

Attached to the Peters Declaration is a Disciplinary Action Form issued to Randle on February 8, 2018, describing the following violations:

- Taking long unauthorized breaks.

---

[21]Id. at 3-5 ¶¶ 6-7, 9-10.

- Being on the phone inside the car and away from the crew during working hours.

- Not following directions when operating equipment.[22]

The section titled "Employer Comments" states that "[e]mployee has been verbally warned many times about the violations above. When hired employee claimed to know how to operate the equipment. When instructed to use the equipment after hire he claimed he does not know how to operate."[23]  Although Randle signed the Disciplinary Action Form, the section titled "Employee Comments" is blank, and the boxes labeled "Agree" and "Disagree with this action being taken" are both unmarked.[24]  Also attached to the Peters Declaration is a Personnel Action Form stating that Randle was terminated effective March 9, 2018, for "[w]ork rule violation."[25]

In pertinent part the Jaramillo Declaration states that

[f]rom the beginning of Mr. Randle's employment, Mr. Barrera and I verbally counseled Mr. Randle multiple times for performance issues, including the following: frequent use of his cell phone while working, frequent taking of long and unauthorized breaks, abandonment of his position during work without notice to his

---

[22]Exhibit A-3 to Peters Declaration, Docket Entry No. 27-2, p. 17.

[23]Id.

[24]Id.  See also Randle Deposition, pp. 177:6-183:16, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 27-28 (testifying that he received the Disciplinary Action Form, signed it, and that although he denies having engaged in the alleged conduct, he did not make any comments or state any objections on the form).

[25]Exhibit A-4 to Peters Declaration, Docket Entry No. 27-2, p. 19.

supervisor; inability to properly operate certain equipment, including roller machine (even though he claimed prior to his hire he had experience operating roller machines); and incorrect reporting of hours for on the job training. Mr. Barrera reported to me on several occasions that he observed these job performance issues with Mr. Randle.

In February of 2018, I informed Human Resoures ("HR") Manager Carla Bright that Mr. Barrera and I had to frequently counsel Mr. Randle about not using his phone while working on the jobsite and not doing his work and that I observed that he did not know how to operate the roller machine. I also informed Ms. Bright that I had personally instructed Mr. Barrera to issue Mr. Randle a disciplinary write up for these infractions . . . Following my instruction, Mr. Barrera issued the disciplinary write up to Mr. Randle on or around February 9, 2018.

Mr. Barrera left AGC in February of 2018, and Mr. Randle began reporting to a different foreman, Francisco Esqueda. Despite verbal counseling and receiving a formal write up, I continued to receive reports from Mr. Esqueda regarding the same job performance issues with Mr. Randle, including walking off the job site and remaining away for long periods of time. As a result of these continuing job performance issues that Mr. Randle failed to correct, despite receiving counseling, I made the decision to discharge Mr. Randle from employment. Mr. Barrera was no longer employed with AGC at the time I made the decision to discharge Mr. Randle, and Mr. Barrera had no involvement in the termination decision. Ms. Bright was also not involved in the decision to discharge Mr. Randle. I informed Mr. Randle of his discharge on March 9, 2018. . .

My decision to discharge Mr. Randle had nothing to do with his race or sex. I was never made aware during Mr. Randle's employment with AGC of any complaints by Mr. Randle that he felt like he was being discriminated against or harassed because of his race or sex, that another employee had touched him, or that employees made discriminatory remarks about him.[26]

---

[26]Jaramillo Declaration, Exhibit B to Defendants' MSJ, Docket

(continued...)

-18-

Because violation of work rules constitutes a legitimate, non-discriminatory reason for terminating Randle's employment, Mayberry, 55 F.3d at 1093, defendants' evidence that Randle violated work rules by using his cell phone while working, taking long and unauthorized breaks, abandoning his position during work without notice to his supervisor, and incorrectly reporting hours for on the job training constitute legitimate, non-discriminatory reasons for Randle's discharge.

### (3)   Randle Fails to Cite Evidence Capable of Establishing Pretext or Motivating Factor

Because defendants have cited legitimate, non-discriminatory reasons for discharging Randle, Randle must substantiate his claim of race and color discrimination by offering evidence capable of proving that discriminatory animus lay at the heart of the decision to discharge him.  Wallace, 777 F. App'x at 89 (citing Price v. Federal Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)).  Randle can carry his burden by offering substantial evidence capable of proving either that and defendants' stated reasons for his discharge are a pretext for race or color discrimination by showing that he was treated differently than similarly situated employees outside of his protected group, or that defendants' stated reasons for his discharge are false or unworthy of credence, and that race or color discrimination was at least a

---

[26](...continued)
Entry No. 27-3, pp. 2-4 ¶¶ 3-6.

motivating factor for his discharge.  <u>Wallace,</u> 777 F. App'x at 89.
Because Randle has failed to offer evidence that he was treated
differently than employees outside of his protected group and, instead,
merely asserts that defendants' stated reasons for his discharge are
false or unworthy of credence, Randle must offer evidence that
(1) rebut[s] each non-discriminatory reason articulated by defendants,
and (2) shows that the real reasons were discriminatory animus for his
race or color.  <u>See Wallace,</u> 777 F. App'x at 89 (citing <u>Laxton,</u> 333
F.3d at 578).  "Evidence is substantial if it is of such quality and
weight that reasonable and fair-minded men [or women] in the exercise
of impartial judgment might reach different conclusions." <u>Id.</u> (citing
<u>Laxton,</u> 333 F.3d at 579).

Defendants have offered evidence that the decision to
discharge Randle was based solely on Jaramillo's conclusion that
Randle continuously violated work rules by using his cell phone
while working, taking long and unauthorized breaks, abandoning his
position during work without notice to his supervisor, and
incorrectly reporting hours for on the job training.  Randle
attempts to demonstrate pretext simply by asserting that he did not
engage in the conduct for which Jaramillo discharged him, and
insisting, without substantiation, that his discharge was the
result of race or color discrimination.[27]  Missing from Randle's
response to Defendants MSJ is any evidence from which reasonable

_____

[27]Plaintiff's Response, Docket Entry No. 28, pp. 3-5.

-20-

jurors could conclude that Jaramillo did not believe that Randle engaged in the conduct for which he was discharged, or that Jaramillo harbored animus for Randle's race or color. Whether Jaramillo was wrong to believe that Randle engaged in the conduct for which he was discharged "is irrelevant, as even an employer's incorrect belief in the underlying facts - or an improper decision based on those facts — can constitute a legitimate, non-discriminatory reason for termination." Amezquita v. Beneficial Texas, Inc., 264 F. App'x 379, 386 (5th Cir. 2008) (per curiam). See Mayberry, 55 F.3d at 1086 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); Cervantez v. KMGP Services Co. Inc., 349 F. App'x 4, 10 (5th Cir. 2009) (per curiam) ("A fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."). Randle cannot establish that defendants' stated reasons for his discharge are a pretext for discrimination merely by presenting his own testimony, Amezquita, 264 F. App'x at 386, or by "reasserting [his] prima facie evidence." Mayberry, 55 F.3d at 1091. Because apart from Randle's own testimony that defendants' stated reasons for his discharge are false, the summary judgment record contains neither evidence rebutting defendants' legitimate, non-discriminatory reasons for his discharge, nor evidence from which reasonable jurors could

conclude that the decision to discharge him was motivated by animus for his race or color, Randle has failed to raise a genuine issue of material fact for trial on his claims of race or color discrimination.

(c)  Conclusions as to Race and Color Discrimination

Because Randle has failed to offer either direct or circumstantial evidence from which reasonable jurors could conclude that the decision to discharge him was motivated by discriminatory animus for his race or color, defendants are entitled to summary judgment on Randle's race and color discrimination claims.

2.  <u>Sexual Harassment/Hostile Environment</u>

Plaintiff alleges that defendants discriminated against him on the basis of his sex, male, by subjecting him to harassment that created a hostile work environment because in

> early February 2018, Francisco Botello [("Botello")], a bulldozer operator that is higher in the chain of command than Plaintiff, grabbed and groped Mr. Randle on the buttocks.  Mr. Randle immediately told Botello that he was not okay with the harassment.  Botello grabbed Randle in front of Supervisor Barrera.  Barrera refused to do anything about the incident, even though Randle insisted this not just mere horseplay.

> On or around the same time period, Bulldozer Operator Botello again grabbed and groped Randle on the buttocks in front of Barrera, this time at an employee meeting.  Randle turned around to Botello, raised his voice, and demanded that Botello stop.  Supervisor Barrera again failed to address this incident.

-22-

> On or around February 8, 2018, Mr. Randle complained to [HR] Manager Carla Bright . . . of two incidents of sexual harassment by Botello done in plain view of Supervisor Barrera.
>
> . . .
>
> Defendants never provided Mr. Randle any feedback or indication that his complaints of illegal discrimination and harassment were being investigated.
>
> After [Randle]'s complaints, Plaintiff Randle was transferred to work under a black male foreman. . .[28]

Defendants argue that they are entitled to summary judgment on Randle's sexual harassment/hostile environment claims because the conduct about which he complains does not constitute actionable sexual harassment, and, alternatively, because defendants took prompt remedial action to abate the conduct which did not reoccur.[29]

(a)   Randle Fails to Establish a <u>Prima Facie</u> Case of Sexual Harassment/Hostile Environment

Texas law recognizes that an employer may be held liable for sex discrimination under § 21.051 of the Texas Labor Code if its employees commit acts of sexual harassment that create a hostile work environment.   <u>See Gumpert v. ABF Freight System, Inc.</u>, 293 S.W.3d 256, 261 (Tex. App. — Dallas 2009, no pet.).   Because Randle testified during his deposition that the alleged harasser, Botello, had the same job as he, was not his supervisor, and had no

---

[28]Plaintiff's Original Complaint, Docket Entry No. 7, pp. 5-6 ¶¶ 19-21 and 23-24.

[29]Defendants' MSJ, Docket Entry No. 27, pp. 8 and 24-27.

-23-

authority over his employment or pay,[30] to establish a prima facie case of sexual harassment/hostile work environment, Randle must offer evidence capable of proving that (1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action. Alief Independent School District v. Brantley, 558 S.W.3d 747, 757 (Tex. App. — Houston [14th Dist.] 2018, pet. denied) (citing Alamo Heights Independent School District v. Clark, 544 S.W.3d 755, 771 (Tex. 2018)). Defendants argue that Randle cannot establish the fourth or fifth elements of his sexual harassment/hostile environment claim.[31]

> **(1) Randle Fails to Cite Evidence Capable of Proving that the Alleged Harassment Affected a Term, Condition or Privilege of His Employment**

To establish a hostile work environment caused by sexual harassment, an employee plaintiff must cite evidence capable of proving that the harassment complained of affected a term,

---

[30] Randle Deposition, pp. 71:3-16, 150:6-151:2, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 7 and 22. See also Peters Declaration, Exhibit A to Defendants' MSJ, Docket Entry No. 27-2, p. 4 ¶ 8 ("[D]uring Mr. Randle's employment, Mr. Botello worked as a laborer and co-worker of Mr. Randle's; Botello was not Mr. Randle's supervisor and made no decisions regarding Mr. Randle's employment or pay.").

[31] Defendants' MSJ, Docket Entry No. 27, pp. 24-27.

-24-

condition, or privilege of the plaintiff's employment. <u>Brantley,</u>
558 S.W.3d at 757; <u>Clark,</u> 544 S.W.3d at 771. This inquiry involves
a subjective and objective component. <u>Harris v. Forklift System,</u>
<u>Inc.,</u> 114 S. Ct. 367, 370-71 (1993). "The [p]laintiff[] must
subjectively perceive the harassment as sufficiently severe or
pervasive, and this subjective perception must be objectively
reasonable." <u>Frank v. Xerox Corp.,</u> 347 F.3d 130, 138 (5th Cir.
2003) (citing <u>Harris,</u> 114 S. Ct. at 371). "[S]imple teasing,
offhand comments, and isolated incidents (unless extremely serious)
will not amount to discriminatory changes in the 'terms and
conditions of employment.'" <u>Faragher v. City of Boca Raton,</u> 118
S. Ct. 2275, 2283 (1998). Whether an environment is objectively
hostile or abusive is determined by considering the totality of the
circumstances. <u>Id.</u> (citing <u>Harris,</u> 114 S. Ct. at 370-71). <u>See</u>
<u>also Brantley,</u> 558 S.W.3d at 757, and <u>Clark,</u> 544 S.W.3d at 771.
Courts look to the "frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating as
opposed to a mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance." <u>Faragher,</u> 118
S. Ct. at 787 (citing <u>Harris,</u> 114 S. Ct. at 370-71).

Randle's sexual harassment/hostile environment claim is based
on his allegations and deposition testimony that on two different
occasions in February of 2018 Botello briefly touched his buttocks
outside of his clothes, and that although Randle's foreman,

Barrera, was present when Botello touched him, Barrera did not take any action.[32]  Accepting Randle's allegations and relevant deposition testimony as true, and assuming without deciding that the alleged harassment was sexual in nature, the court concludes that the conduct about which Randle complains does not constitute actionable harassment because Randle fails to cite any evidence from which reasonable jurors could conclude that the conduct was sufficiently frequent, severe, threatening, or humiliating to affect a term, condition, or privilege of his employment.  Randle testified that the touching lasted only a matter of seconds,[33] he was touched outside of his clothes,[34] and both instances of touching occurred in the presence of four or five other male members of his crew,[35] who laughed, smiled, and smirked.[36]  Although Randle alleges that the touching occurred in the presence of Barrera who did nothing about it, Randle testified that the first time Botello

---

[32]Randle Deposition, pp. 92:10-105:7, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 9-13.

[33]Id. at 102:6-8, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 12.

[34]Id. at 99:1-6, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 11.

[35]Id. at 92:17-22 (first touch); and 99:7-100:8 (second touch), Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 9 and 11.

[36]Id. at 103:18-104:25, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 12.

touched him, Barrera told Botello to stop playing.[37] Moreover, Randle testified that each time Botello touched him, he told Botello to stop, and that after the second time Botello never touched him again.[38] Randle testified that he liked his job, he was good at his job, and that nothing prevented him from doing his work.[39] Randle's testimony shows that the two instances of unwelcome touching about which he complains were merely isolated incidents that were neither sufficiently frequent, severe, threatening, nor humiliating to have interfered with or undermined his work performance, and the two incidents did not, in fact, interfere with or undermine his work performance. Accordingly, the court concludes that accepting Randle's allegations and deposition testimony as true, Randle has failed to cite evidence from which reasonable jurors could find that Botello's conduct created an objectively hostile work environment, i.e., an environment that a reasonable person would find hostile and abusive. See Faragher, 118 S. Ct. at 2284 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.").

---

[37]Id. at 94:4-97:2, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 10-11.

[38]Id. at 92:10-105:7, 151:4-18, 171:15-172:12, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 9-13, 22, and 26.

[39]Id. at 64:23-66:13, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 5-6.

>            **(2)   Randle Fails to Cite Evidence Capable of
>                    Establishing that AGC Failed to Take Prompt
>                    Remedial Action to Stop the Alleged Harassment**

Even if the conduct about which Randle complains was
sufficiently extreme to create a hostile work environment, the
summary judgment record establishes that defendants did not fail to
take prompt remedial action, and that after Randle lodged his
complaints, the conduct about which he complains did not reoccur.
Randle testified that he reported the two instances of alleged
harassment to HR Manager Bright on two different days about one
week apart.[40]   Notes maintained by Bright indicate that on February
7, 2018, Randle complained to her that a co-worker touched his
buttocks on two separate occasions, and that on February 12, 2018,
he asked her if she had spoken to the person who had touched him
and Randle, for the first time, identified Botello as that person.[41]
Randle testified that Bright told him to work on a different crew
for which the foreman was a black male named Mr. Arthur, but that
Randle never made the transfer.[42]   Although Randle contends that
Bright did not investigate his complaints of sexual harassment, and
characterizes the entire process as "unfair,"[43] Randle testified

---

[40]Id. at 89:2-92:9, 93:6-105:20, Exhibit C to Defendants' MSJ,
Docket Entry No. 27-4, pp. 9-13.

[41]Exhibit A-2 to Defendants' MSJ, Docket Entry No. 27-2, p. 12.

[42]Randle Deposition, pp. 115:13-124:23, 153:2-154:1, Exhibit
C to Defendants' MSJ, Docket Entry No. 27-4, pp. 15-17, and 23.

[43]Plaintiff's Affidavit, Docket Entry No. 29, p. 2 ¶ 1
(asserting that "when the complaint was first lodged Mrs. Bright
never properly investigated the claims. . ."), and ¶ 2 (asserting
(continued...)

that he did not know what, if any, investigation Bright conducted,[44] and that after he complained about Botello's conduct to Bright, Botello did not touch him again.[45]    Attached to the Peters Declaration is a copy of notes taken by Bright indicating that on February 12, 2018, Bright investigated Randle's complaint by speaking with Barrera and Botello, after which she concluded that Randle's complaint was unfounded.[46]  Because the undisputed evidence establishes that Bright investigated Randle's complaints of sexual harassment as soon as Randle named Botello as the person who touched him, and because Randle testified that after he complained to Bright, Botello did not touch him again, Randle has failed to cite evidence from which reasonable jurors could conclude that defendants failed to take prompt remedial action to stop the harassment of which he complained.

---

[43](...continued)
that "the entire process was completely unfair").   Defendants object and move to strike ¶¶ 1 and 2 of Plaintiff's Affidavit arguing that they are speculative, conclusory, and lack foundation as they fail to set forth the basis of Plaintiff's personal knowledge. See Defendants' Objections and Motion to Strike, Docket Entry No. 31, pp. 2-3.   Since Randle testified at his deposition that he did not know what, if any, investigation of his complaint against Botello Bright conducted, defendants' objections to ¶¶ 1 and 2 of Plaintiff's Affidavit are **SUSTAINED**, and defendants' motion to strike ¶¶ 1 and 2 of Plaintiff's Affidavit will be granted. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

[44]Randle Deposition, pp. 120:4-121:5, 123:18-24, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 16-17.

[45]Id. at 172:3-12, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, p. 26.

[46]See Notes of Carla Bright, Exhibit A-2 to Defendants' MSJ, Docket Entry No. 27-2, pp. 12-13.

-29-

(b)   Conclusions   as   to   Randle's   Sexual   Harassment/
      Hostile Environment Claim

For   the   reasons   explained   above   the   court   concludes   that   the
summary   judgment   record   does   not   contain   evidence   capable   of
establishing   a   prima facie   case   of   sexual   harassment/hostile   work
environment.


3.   Retaliation

Randle alleges that

> a.   Plaintiff   engaged   in   a   protected   activity
>      (including,   but   not   limited   to,   making
>      complaints   of,   participating   in,   and   opposing
>      discrimination;)
>
> b.   Plaintiff   was   subjected   to   adverse   employment
>      action(s); and
>
> c.   There   is   a   causal   connection   between   the
>      protected   activity   and   Defendants'   adverse
>      action.[47]

Asserting   "Randle   admits   that   he   did   not   report   alleged   race
discrimination,   including   the   alleged   discriminatory   remarks   by
Barrera,   to   anyone   at   AGC,   so   the   only   alleged   protected   activity
is   his   report   about   the   alleged   touching   by   Botello,"[48]   defendants
argue   that   they   are   entitled   to   summary   judgment   on   Randle's
retaliation   claim   because   Randle   cannot   establish   a   prima facie

---

[47]Plaintiff's   Original   Complaint,   Docket   Entry   No.   7,   p.   9
¶ 44.

[48]Defendants'   MSJ,   Docket   Entry   No.   27,   p.   28   (citing   Randle
Deposition,   pp.   31:10-32:24,   133:10-21,   Exhibit   C   to   Defendants'
MSJ,   Docket   Entry   No.   27-4,   pp.   4   and   20).

case of retaliation, and, alternatively, Randle cannot establish pretext or that retaliatory motives played a role in the decisions affecting his employment.[49]   Randle responds that the day after he complained to Bright about Botello's sexually harassing conduct, Barrera retaliated against him by issuing him a written warning on a disciplinary action form, and that one month later, the day after he asked Bright about the status of her inquiry into his complaint against Botello, Jaramillo retaliated against him by discharging him for violating work rules.[50]   Retaliation claims based on circumstantial evidence use the same burden-shifting analysis as race-discrimination claims.   See Wallace, 777 F. App'x at 91.

> (a)   Randle Establishes a Prima Facie Case of Retaliation

Section 21.055 of the TCHRA prohibits employers from retaliating against their employees for engaging in protected activities such as opposing a discriminatory practice, making a charge, or filing a complaint.   See Gumpert, 293 S.W.3d at 262. Where, as here, the plaintiff does not provide direct evidence of retaliation, he must establish a prima facie case by showing that (1) he engaged in protected activity, (2) he suffered a material adverse action, and (3) a causal link exists between the protected

---

[49]Id. at 28-30.

[50]Plaintiff's Response, Docket Entry No. 28, pp. 3-6.

activity and the material adverse action.   Id.   See also Wallace,
777 F. App'x at 91 (citing Jenkins v. City of San Antonio Fire
Department, 784 F.3d 263, 269 (5th Cir. 2015)).


### (1)   Randle Engaged in Protected Activity

An employee has engaged in protected activity if he has
opposed any practice made an unlawful practice under the TCHRA.
Texas Labor Code § 21.055.   See also Wallace, 777 F. App'x at 91
(citing Turner v. Baylor Richardson Medical Center, 476 F.3d 337,
348 (5th Cir. 2007)).   "To satisfy this opposition requirement,
[Randle] need only show that []he had a 'reasonable belief that the
employer engaged in unlawful employment practices.'"   Turner, 476
F.3d at 348.   Although defendants dispute Randle's assertion that
his complaints about Botello's conduct to Bright constitute
protected activity,[51] the Fifth Circuit has held that "an employee's
complaint to the head of personnel constituted protected activity."
Aryain v. Wal-Mart Stores, Tex. LP, 534 F.3d 473, 484 & n. 8 (5th
Cir. 2008).   Since, however, Randle testified that he never
complained about Barrera's allegedly racist comments to anyone at
AGC,[52] Randle cannot establish a claim for retaliation based on a
complaint of race or color discrimination.

---

[51]Id. at 4 (asserting that he "lodge[d] a complaint that is
protected activity"); Defendants' MSJ, Docket Entry No. 27, p. 28.

[52]Randle Deposition, pp. 31:6-32:24, and 133:10-21, Exhibit C
to Defendants' MSJ, Docket Entry No. 27-4, pp. 4 and 20.

**(2)  Randle's Discharge Was a Adverse Action**

Randle argues that

> from the time he exercised the protected constitutional
> right to complain about racial discrimination in the work
> place under Title 21 the immediate supervisor Galvino
> Barrera retaliated the same day by fabricating a[nd]
> falsifying allegations of him being on his phone and then
> that he did not know how to operate the machinery when in
> fact the plaintiff had not had no complaints until he
> complained of the abuse.[53]

Randle also argues that after he asked Bright about the status of
the investigation of the complaints that he had lodged against
Botello, "he received a fabricated write up from Fabio[] Jaramillo,
whom falsified that the new supervisor told him of these alleged
allegations when the new supervisor should have been the one whom
should have written the alleged allegations,"[54] pursuant to which
he was discharged.[55]

An adverse action for purposes of establishing a prima facie
case of retaliation is one that "a reasonable employee would have
found . . . [to be] materially adverse, which in this context means
it well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination."  Burlington Northern &
Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006)
(internal quotation marks and citations omitted).  While discharge

---

[53]Plaintiff's Response, Docket Entry No. 28, p. 4.

[54]Id. at 5.

[55]Id. at 4 (subheading "the falsified alleged reasons for
plaintiff's unlawful discharge").

-33-

undisputedly constitutes a materially adverse employment action
capable of supporting a retaliation claim, the written warning that
Randle received from Barrera on February 8, 2018, does not
constitute a materially adverse employment necessary to support a
claim for retaliation.[56]   See Gumpert, 293 S.W.3d at 263 (holding
that a "single alleged disciplinary action does not amount to a
materially adverse employment action necessary to support a claim
for retaliation").   In Jackson v. Honeywell International, Inc.,
601 F. App'x 280, 286 (5th Cir. 2015), the Fifth Circuit stated
that "written warnings and unfavorable performance reviews are not
adverse actions where colorable grounds exist for disciplinary

---

[56]And even if the written warning could be considered a
sufficiently adverse action to support a retaliation claim, Randle
has failed to make a showing other than temporal proximity that the
written warning was linked in any way to his complaints about
sexual harassment.   Jaramillo has stated in his declaration that he
instructed Barrera to issue the disciplinary write up to Randle:

> In February of 2018, I informed Human Resources ("HR")
> Manager Carla Bright that Mr. Barrera and I had to
> frequently counsel Mr. Randle about not using his phone
> while working on the jobsite and not doing his work and
> that I observed that he did not know how to operate the
> roller machine.   I also informed Ms. Bright that I had
> personally instructed Mr. Barrera to issue Mr. Randle a
> disciplinary write up for these infractions.   At the time
> I instructed Mr. Barrera to issue the write up to
> Mr. Randle, I was not aware of Mr. Randle claiming he had
> been touched by another employee or whether he had
> reported to anyone at AGC that he had been touched by
> another employee.   Following my instruction, Mr. Barrera
> issued the disciplinary write up to Mr. Randle on or
> around February 9, 2018.

Jaramillo Declaration, Exhibit B to Defendants' MSJ, Docket Entry
No. 27-3, p. 3 ¶ 4.

-34-

action or where the employee continues to engage in protected activity." Here, evidence provided by the Peters and Jaramillo declarations, and by the notes maintained by Bright and attached to the Peters declaration provide colorable grounds for both the written warning that Randle received on February 8, 2018, and for Jaramillo's decision to discharge Randle on March 9, 2018. Moreover, Randle's deposition testimony that after he complained of Botello's conduct to Bright in February of 2018, he returned to Bright on March 9, 2018, to ask about her investigation shows that the written warning did not dissuade Randle from continuing to engage in arguably protected conduct. Accordingly, the court concludes that Randle's discharge constitutes an adverse event sufficient to support his retaliation claim, but that the written warning Randle received on February 8, 2018, does not constitute such an adverse employment action.

### (3)   Causal Connection Between Protected Activity and Adverse Employment Action

Temporal proximity of the adverse employment action to the protected activity can be a factor in establishing the causal connection needed to substantiate a prima facie case of retaliation. Garcia v. Professional Contract Services, Inc., 938 F.3d 236, 242 (5th Cir. 2019) ("[A] plaintiff . . . can show the prima facie case's required 'causal connection' by pointing to close enough timing between the protected activity and the adverse

action."). For temporal proximity alone to establish prima facie causation, it must be "very close." Clark County School District v. Breeden, 121 S. Ct. 1508, 1511 (2001) (listing cases).

Randle engaged in protected activity by complaining of sexual harassment to Bright in February of 2018, and he experienced an adverse employment action when Jaramillo discharged him on March 9, 2018. The close temporal proximity of one month between Randle's complaint of sexual harassment and his discharge is sufficient to establish a prima facie case of retaliation under § 21.055. See Garcia, 938 F.3d at 243 ("This court has previously held that a period of two months is close enough to show a causal connection."). See also Breeden, 121 S. Ct. at 1511 (citing with approval a case holding that three months was not sufficient to show a causal connection).

> (b) Defendants Cite a Legitimate, Non-Discriminatory Reason for Randle's Discharge

For the reasons stated in § II.B.1(b)(2), above, the court has already concluded that defendants have satisfied their burden to produce evidence of legitimate, non-discriminatory reason for discharging Randle on March 9, 2018.

> (c)   Randle   Fails   to   Cite   Evidence   Capable   of
>       Establishing Pretext

Unlike claims for discrimination subject to § 21.125(a) of the Texas Labor Code, which applies a "motivating factor" causation standard, retaliation claims under § 21.055 are subject to the traditional "but for" causation standard. See Gumpert, 293 S.W.3d at 262 ("For an adverse action to be causally linked to the protected conduct, a plaintiff must show that the action would not have occurred but for the protected conduct."). See also Garcia, 938 F.3d at 243-44 ("At the pretext stage, the Supreme Court's decision in [University of Texas Southwestern Medical Center v.] Nassar[, 133 S. Ct. 2517, 2533 (2013)], requires a showing of but-for causation, which requires more than mere temporal proximity."). In other words, Randle must cite evidence capable of proving that he would not have been discharged but for having engaged in protected activity.

Citing Randle's deposition testimony and Jaramillo's declaration, defendants argue that "Randle has no evidence that Jaramillo — who made the discharge decision — was aware of Randle's report to Human Resources about Botello or any other alleged protected activity."[57]  Jaramillo declared that

> My decision to discharge Mr. Randle had nothing to do
> with his race or sex.  I was never made aware during
> Mr. Randle's employment with AGC of any complaints by
> Mr. Randle that he felt like he was being discriminated

---

[57]Defendants' MSJ, Docket Entry No. 27, p. 29.

against or harassed because of his race or sex, that
another employee had touched him, or that employees made
discriminatory remarks about him.[58]

Randle testified that he never reported any of his complaints to
Jaramillo and that he did not know if Jaramillo was aware of them:

> Q.   You never reported any discrimination to Mr. Fabio;
>      right?
>
> A.   No.
>
> Q.   You don't know one way or the other whether or not
>      Mr. Fabio even knew about your prior complaints;
>      right?
>
> A.   No.
>
> Q.   That's right, you don't know?
>
> A.   I don't know.[59]

In response to defendants' proffered legitimate,
nondiscriminatory reasons for his discharge, Randle argues that
defendants' stated reasons are false, and that retaliatory intent
is shown by the timing of his discharge only one month after he
complained about Botello's harassment.[60]  "Temporal proximity may
be evidence of a causal connection only when a person with input
into the employment decision was aware of the protected activity."
Crutcher v. Dallas Independent School District, 410 S.W.3d 487, 496

---

[58]Jaramillo Declaration, Exhibit B to Defendants' MSJ, Docket
Entry No. 27-3, p. 4 ¶ 6.

[59]Randle Deposition, p. 133:13-21, Exhibit C to Defendants'
MSJ, Docket Entry No. 27-3, p. 20.

[60]Plaintiff's Response, Docket Entry No. 28, pp. 3-6.

(Tex. App. — Dallas 2013, no pet.).  The summary judgment record contains evidence that Randle complained about Botello touching him to Bright, the individual charged with investigating such complaints, but does not contain any evidence capable of proving either that Randle made a similar complaint to Jaramillo, the individual who made the decision to discharge him, or that Jaramillo knew that Randle complained to Bright about Botello's allegedly harassing conduct.  The court concludes, therefore, that the summary judgment record lacks evidence from which reasonable jurors could conclude that Jaramillo knew that Randle had complained about Botello's conduct.  Because the summary judgment record lacks evidence from which reasonable jurors could conclude that Jaramillo knew that Randle complained about Botello's conduct, the summary judgment record contains no evidence from which reasonable jurors could find that Jaramillo discharged Randle in retaliation for having engaged in protected conduct by complaining about Botello's conduct.

Temporal proximity alone is insufficient to prove a causal link connecting the protected activity and the adverse employment action.  Garcia, 938 F.3d at 243-44 (citing Strong v. University Healthcare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007)).  Temporal proximity may only create a genuine dispute of material fact on the issue of but-for causation if the employee also introduces other probative evidence of pretext.  Id. Randle's only

-39-

additional evidence of pretext is his deposition testimony denying that he engaged in the conduct for which he was discharged.[61] Although Randle asserts that he did not engage in the conduct for which he was discharged, for the reasons stated in § II.B.1(b)(3), above, with respect to Randle's race and color discrimination claims, the court has already found that Randle has failed to cite evidence from which reasonable jurors could conclude that the decision to discharge him was not based on Jaramillo's reasonable belief that he had violated work rules by using his cell phone while working, taking long and unauthorized breaks, abandoning his position during work without notice to his supervisor, and incorrectly reporting hours for on the job training.

Randle argues that Jaramillo's non-retaliatory reasons for discharging him are false, but apart from his deposition testimony he has not presented evidence capable of either supporting his argument that Jaramillo's stated reasons for his discharge are false, or that Jaramillo did not reasonably believe that Randle engaged in the conduct for which he was discharged.  The court's job "conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." White v. Denton County, 655 F. App'x 1021, 1026 (5th Cir. 2016) (per curiam) (citing LeMaire v. Louisiana Department of Transportation & Development, 480 F.3d 383, 391 (5th Cir. 2007)).  "Our anti-

---

[61]Randle Deposition, pp. 177:6-182:21, Exhibit C to Defendants' MSJ, Docket Entry No. 27-4, pp. 27-28.

discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." LaMaire, 480 F.3d at 391. Because Randle has failed to cite evidence that Jaramillo was aware that he had engaged in protected conduct by complaining about Botello's conduct, and has failed to do more than deny that he engaged in the conduct for which Jaramillo discharged him, Randle has failed to raise a genuine issue of material fact for trial regarding whether Jaramillo's decision to discharge him was a pretext for retaliation. See Crutcher, 410 S.W.3d at 498.

(d)  Conclusions as to Retaliation

For the reasons explained above, the court concludes that Randle has failed to raise a genuine issue of material fact for trial on his retaliation claim. Randle's subjective belief that he was discharged in retaliation for complaining of sexual harassment is not sufficient to create an inference that defendants did not discharge him for the stated reasons that he repeatedly violated work rules by using his cell phone while working, taking long and unauthorized breaks, abandoning his position during work without notice to his supervisor, and incorrectly reporting hours for on the job training. See Gumpert, 293 S.W.3d at 262-63 ("[S]ubjective belief as to the motivation for the action is insufficient to defeat summary judgment.").

### III. **Defendants' Objections and Motion to Strike**

Defendants object to Plaintiff's Declaration in its entirety because it was not timely filed pursuant to Local Rules 7.3 and 7.4(A), and object to each paragraph individually as speculative, conclusory, lacking in foundation, and based on inadmissible hearsay.[62]  For the reasons stated in footnote 12, above, the court has sustained the defendants' objections to the last paragraph of Plaintiff's Affidavit purporting to show that the Jaramillo Declaration is false, and for the reasons stated in footnote 43, above, the court has sustained the defendants' objections to the two numbered paragraphs of Plaintiff's Affidavit purporting to show that defendants either failed to investigate his sexual harassment complaint and/or that the investigation was unfair.  "Despite [the Fifth Circuit's] general willingness to construe pro se filings liberally, [the Fifth Circuit] still require[s] pro se parties to fundamentally abide by the rules that govern federal courts. . . Pro se litigants must properly . . . present summary judgment evidence."  E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir. 2014) (internal quotations and citations omitted).  Because Plaintiff's Affidavit contains only the paragraphs for which the court has sustained objections, Defendants' Motion to Strike Plaintiff's Affidavit (Docket Entry No. 31) will be granted.

---

[62]Defendants' Objections and Motion to Strike, Docket Entry No. 31.

## IV. <u>Defendants' Motion for Sanctions</u>
## <u>and Defendants' Motion in Limini</u>

Asserting that on October 22, 2020, the court granted their motion to compel discovery and ordered Randle to supplement his discovery responses and document production, and fully respond to Defendants' Second Requests for Production by November 12, 2020, but that as of December 15, 2020, Randle had not responded, defendants seek reasonable and just sanctions for Randle's discovery abuse pursuant to Federal Rule of Civil Procedure 37(b).[63] Defendants explain that

> [t]he discovery requests at issue in the Discovery Order [that] Plaintiff has ignored are related to Plaintiff's claims of discrimination, harassment, retaliation and alleged damages.  In particular, many of the requests seek basic information and documents directly related to his claims for lost wages and mental anguish damages, as well as Defendants' affirmative defense that Plaintiff failed to mitigate his damages.  Without this discovery, Defendants are prejudiced in their ability to assess Plaintiff's claims for damages, including offsets for lost wages, and are prejudiced in their ability to advance their failure-to-mitigate defense.[64]

Defendants ask the Court to dismiss this action with prejudice.[65]

For the reasons stated in § II, above, the court has already concluded that defendants are entitled to summary judgment on all of the claims that Randle has asserted in this action.   Because

---

[63]Defendants' Motion for Sanctions, Docket Entry No. 32, pp. 1-2.

[64]<u>Id.</u> at 3.

[65]<u>Id.</u> at 5.

pursuant to the granting of Defendants' MSJ, this action will be dismissed with prejudice, Defendants' Motion for Sanctions (Docket Entry No. 32), which seeks dismissal of this action with prejudice, will be denied as moot.  Because this action will be dismissed with prejudice, Defendants' Motion in Limini (Docket Entry No. 33) will also be denied as moot.

### V. Plaintiff's Motion for Ineffective Assistance of Counsel During Trial

Asserting that his last attorneys of record withdrew because he did not want to accept a settlement offer, and that the attorneys refuse to send documents to him, Randle moves the court to hold a hearing "to set out the differences between the plaintiff and the former attorney of record."[66]  The clerk's docket shows that on June 12, 2020, attorneys Adam Poncio and the Poncio Law Offices, P.C., and Darius Khosravia and DK Law PLLC, moved to withdraw as attorneys of record for Randle (Docket Entry No. 18), and that on the same day the court entered an Order on Unopposed Corrected Motion to Withdraw as Counsel of Record (Docket Entry No. 19), granting the motion to withdraw, abating the case for 30 days so Randle could seek other counsel, and setting scheduling deadlines. The pending motion for ineffective assistance of counsel does not contain a certificate of service indicating that it has been served

---

[66]Plaintiff's Motion for Ineffective Assistance of Counsel during Trial, Docket Entry No. 34, pp. 1-2.

upon Randle's former counsel.  Moreover, any dispute that Randle has with his former attorneys over their representation of him in this action is a matter separate and apart from the current action and for which the court does not likely have jurisdiction. Accordingly, Plaintiff's Motion for Ineffective Assistance of Counsel During Trial will be denied.

### VI.  <u>Conclusions and Order</u>

For the reasons stated in § II, above, the court concludes that Randle has failed to raise genuine issues of material fact for trial on his claims for race and color discrimination, sexual harassment/hostile environment, and retaliation in violation of the Texas Commission on Human Rights Act.  Accordingly, Defendants' Motion for Summary Judgment, Docket Entry No. 27, is **GRANTED**.

For the reasons stated in § III, above, Defendants' Objections and Motion to Strike Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 31, is **GRANTED**, and Plaintiff's Affidavit in Dispute of Defendant Peters, Cody and Fabio Jaramillo, Docket Entry No. 29, is **STRICKEN**.

For the reasons stated in § IV, above, Defendants' Motion for Sanctions, Docket Entry No. 32, is **DENIED as MOOT**, and Defendants' Motion in Limini, Docket Entry No. 33, is **DENIED as MOOT**.

For the reasons stated in § V, above, Plaintiff's Motion for Ineffective Assistance of Counsel during Trial, Docket Entry No. 34, is **DENIED**.

**SIGNED** at Houston, Texas, on this 5th day of January, 2021.

_____
                        SIM LAKE
        SENIOR UNITED STATES DISTRICT JUDGE